Nat **HENTOFF** et al., Plaintiffs,

v.

**Richard H. ICHORD** et al., Defendants.

**Civ. A. No. 3028–70.**

United States District Court, District of Columbia.

Oct. 28, 1970.

Lawrence Speiser, Hope Eastman, American Civil Liberties Union, Mitchell Rogovin, John Rigby, Arnold & Porter, Jeffrey D. Bauman and Robert D. Rosenbaum, Washington, D. C., for plaintiffs.

Kevin T. Maroney, Deputy Asst. Atty. Gen., Department of Justice, Joseph M. Hannon, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a class action for declaratory judgment and injunctive relief. Plaintiffs seek to enjoin the official publication and distribution of a Report of the Committee on Internal Security of the House of Representatives. The matter is before the Court on affidavits and briefs after full argument. The parties have stipulated that the record before the Court is complete and that the case is in posture for final disposition.

Defendants in this action are the members of the House Committee on Internal Security, its Chief Counsel, the Public Printer and the Superintendent of Documents. The Report in question is entitled "Limited Survey of Honoraria Given Guest Speakers for Engagements at Colleges and Universities," consisting of 25 pages. A copy of the Report as filed with the House of Representatives following the commencement of this action is in evidence. The Public Printer is presently subject to a Temporary Restraining Order issued by this Court, restraining any printing or distribution of the Report which the Chairman of the Committee has released to the press.

A foreword to the Report prepared by the Committee's Chairman states its origin:

Early this year, I became concerned —as did many of my colleagues— with frequent news accounts of inflammatory speeches which were being made to large audiences on college and university campuses by the radical rhetoricians of the New Left promoting violence and encouraging the destruction of our system of govern-

ment. At times, reference was made in these reports to the fact that the speakers who preached such a message of hate for America and its institutions often received substantial appearance fees.

A question which persistently confronts our committee is the one of how and where revolutionary movements in the United States obtain the financing for their activities.

The Report presents the results of a survey conducted by the Committee's staff without use of any formal process. The Committee staff by correspondence obtained information from a number of institutions of higher learning, listing speakers who had appeared on their campuses and in some cases the honoraria paid them.

A list of 1168 names thus obtained, as supplemented by newspaper data, was then checked against Committee sources in an effort to determine whether or not any of the speakers had been associated with one or more of 12 organizations.[1] In this fashion the Committee isolated the names of 65 individuals. The Report, after describing the procedures summarized above, listed the names of each of the individuals so chosen, their alleged associations or affiliations, and the honoraria paid them individually where that had been ascertained. The Report raised the inference, without any positive evidence or any effort to obtain such evidence, that the sums paid for the speeches might have been made available, in whole or in part, to the organizations. The Report concludes as follows:

The committee believes that further, more costly, probing of this matter would only add greater detail to the findings—not greater enlightenment. This report, therefore, concludes the committee's inquiry into the question of honoraria paid campus speakers.

No legislation is mentioned or recommended.

When the complaint was filed, the Report was due to be released at noon on the following day. Plaintiffs sought to prevent filing, printing or any republication by a temporary restraining order. On October 13, 1970, the Court enjoined printing and distribution but refused to interfere with the filing of the Report with the House of Representatives or to enjoin any member of the Committee from discussing or disseminating the Report on or off the floor of the House.

Plaintiffs contend that the publication through the Public Printer and wide dissemination of the Report is still contemplated. This is not in dispute. The Printer has been directed initially to print 6,000 copies. Plaintiffs urge that this contemplated publication and distribution will infringe the rights of the 65 listed individuals under the First Amendment, and that it is being undertaken by the Committee without any proper legislative purpose. Plaintiffs ask that the Court enjoin the members of Congress, their agents and representatives and the Public Printer from any publication and distribution of this Report, limiting its disclosure to insertion in the *Congressional Record* and such discussion as follows in the normal process of any debate on the floor of the House.

By motion to dismiss, the Department of Justice, which appears on behalf of

---

[1]. The 12 organizations listed in an appendix to the Report are:
Nation of Islam;
Communist Party;
National Committee to Abolish HUAC;
National Mobilization Committee to End the War in Vietnam;
Socialist Workers Party;
[Persons] Cited for Contempt in Connection with the "Chicago Seven" Conspiracy Trial;
Black Panther Party;
Students for a Democratic Society;
Student Non-Violent Coordinating Committee;
New Mobilization Committee to End the War in Vietnam;
Spring Mobilization Committee to End the War in Vietnam; and
Youth International Party (Yippies).

all defendants,[2] raises a series of objections which place in focus the difficult constitutional issues presented by this action. Defendants assert that the publication and distribution of the Report is protected both by the Speech or Debate Clause of the Constitution and by the doctrine of separation of powers. Further, defendants claim that the Report was prepared for a proper legislative purpose, but that in any event the Court is wholly without power to prohibit the printing and distribution of any report on any subject prepared by any committee of Congress for any purpose where the information contained in the report has been gathered by the committee without use of process or other legal compulsion. Thus the issues as framed relate to whether the Court has any authority to entertain the complaint in any of its aspects and, if so, the extent of relief which is appropriate under the Constitution.

Before turning to a review of the authorities, it is important to emphasize that this litigation unquestionably presents an immediate issue of free speech and assembly. The Report is exclusively concerned with speakers on college campuses who appeared there by invitation or otherwise and discussed issues of current importance in our society. It is not suggested in the Report that the speeches in any instance presented any clear or immediate danger, but simply that the speakers are "Pied Pipers of pernicious propaganda." They are listed in the so-called "blacklist" merely because they spoke and are believed to have been at some time associated with an organization distasteful to the Committee.

The Committee listed speakers in the report apparently with the hope and expectation that college officials, alumni and parents would bring social and economic pressures upon the institutions that had permitted these speeches in order to ostracize the speakers and

stultify further campus discussion. The Report states:

> If, in a sampling of 3½% of the institutions of higher education, funds in this volume [$108,967.85] are derived by such persons, the people of the United States have a right to conclude that the campus-speaking circuit is certainly the source of significant financing for the promoters of disorderly and revolutionary activity among students. Speaking appearances are not only revenue-producing, but afford a forum where the radicalization process may be continually expanded.
>
> \* \* \* \* \* \*
>
> The committee believes that the limited sampling made is sufficient to alert college and university administrators, alumni, students, and parents to the extent of campus speaking in promoting the radical revolutionary movement. \* \* \*

■ Thus, whether or not the Report was prepared pursuant to a proper legislative purpose, a matter which will be considered below, there can be no question as to its impact upon the right of free speech and assembly. This is an area that our form of government, our Constitution and decisions of the Supreme Court emphasize is entitled to the closest scrutiny and the broadest possible protection. *See, e. g.,* Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173 (1919) (Holmes, J. and Brandeis, J., dissenting). Recent history is full of instances where disregard for these basic freedoms has done damage to individuals and corroded our institutions. *See, e. g.,* Barenblatt v. United States, 360 U.S. 109, 147–159, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959) (Black, J. dissenting); Appendices 4 and 5 to

---

2. Congressmen Preyer and Stokes are not represented by counsel in this action.

Jurisdictional Statement filed in the Supreme Court in the case of Stamler v. Willis, 393 U.S. 407, 89 S.Ct. 677, 21 L.Ed.2d 627 (filed herein as Plaintiffs' Exhibit 1). Plaintiffs clearly demonstrate that they are faced with irreparable injury if publication of the "blacklist" under the auspices of the Congress is allowed, and accordingly defendants must demonstrate a constitutionally protected justification for publication.

First it is suggested that the publication of this Report is protected by the Speech or Debate Clause of the Constitution. Article I, Section 6, Clause 1, of the Constitution reads in pertinent part:

> The Senators and Representatives * * * for any Speech or Debate in either House * * * shall not be questioned in any other Place.

In considering the application of this Clause to the issues here presented, it should be noted that no injunction is sought to prevent any members of the Committee or other members of the House or Senate from discussing the Report, its contents or its import on the floor of Congress. Nor is any injunction sought which will prohibit placing the Report in the *Congressional Record* for the information of all members of Congress. Plaintiffs concede and the Court so holds that under the Speech or Debate Clause there is no power in the Court to enter prohibitions of this type. The question presented is a narrower one, namely, whether the Speech or Debate Clause has been or should be interpreted to have a broader application than these privileges which it clearly grants.

The scope of the protection afforded by the Speech or Debate Clause has been considered by the Supreme Court on five occasions: Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1881); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); and Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944,

23 L.Ed.2d 491 (1969). These cases establish that the courts lack jurisdiction to entertain an action seeking any remedy against a member of Congress for any statement made or action taken in the sphere of legitimate legislative activity. As stated in *Powell:*

> The purpose of the protection afforded legislators is not to forestall judicial review of legislative action but to insure that legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions. * * * Freedom of legislative activity and the purposes of the Speech or Debate Clause are fully protected if legislators are relieved of the burden of defending themselves. 395 U.S. at 505, 89 S.Ct. at 1955–1956.

The Supreme Court in *Powell* left open the question whether an action could be maintained against Congressmen to compel the seating of a member of the House, the restoration of seniority privileges, and the award of back pay. 395 U.S. at 506, f. 26, 89 S.Ct. at 1950. Plaintiffs contend that the discussion in *Powell*, together with such decisions as McGovern v. Martz, 182 F.Supp. 343 (D.D.C.1960), and Long v. Ansell, 63 U.S.App.D.C. 68, 69 F.2d 386 (1934), indicates that this Court may restrain Congressmen from publishing, filing, or distributing, except by insertion in the *Congressional Record,* a report that impinges upon First Amendment rights.

The Court is of a contrary view. Members of Congress have the same right to speak as anyone else. Their legislative activities are not limited to speech or debate on the floor of Congress. Information in this Report involves matters of public concern, and the Court will take no action which limits the use that individual Congressmen choose to make of the Report or its contents on or off the floor of Congress. No injunction is appropriate against any Congressman named defendant. This leaves for disposition the question of what relief, if any, should be granted as to the Public

Printer, the Superintendent of Documents,[3] and employees or representatives of the Committee.

 It is claimed that the protection afforded individual Congressmen by the Speech or Debate Clause is equally applicable to the Public Printer, and any members of the Committee staff when acting at the express direction of the Committee or of Congress. Reliance is placed primarily on Methodist Federation for Social Action v. Eastland, 141 F. Supp. 729 (D.D.C.1956), where both the Public Printer and the Superintendent of Documents were among the defendants in an action seeking to enjoin publication and distribution by a Senate Subcommittee on Internal Security of a document which named the plaintiff as a communist-front organization. A three-judge court dismissed the complaint against all defendants, apparently relying, among other things, on the Speech or Debate Clause. While the plaintiff's claim was founded on an alleged libel in the report and not, as here, on an abridgment of First Amendment freedoms, the language of the court was broad:

> Nothing in the Constitution authorizes anyone to prevent the President of the United States from publishing any statement. This is equally true whether the statement is correct or not, whether it is defamatory or not, and whether it is or is not made after a fair hearing. Similarly, nothing in the Constitution authorizes anyone to prevent the Supreme Court from publishing any statement. We think it equally clear that nothing authorizes anyone to prevent Congress from publishing any statement. 141 F. Supp. at 731.

In its application to members of Congress, this language is consistent with this Court's decision that no injunction should issue against the members of the Committee. Insofar as the court in

*Methodist Federation* read the Speech or Debate Clause or the separation of powers doctrine to afford complete protection to anyone other than Congressmen, however, the decision has been in effect overruled by *Powell,* where the Supreme Court stated: "That House employees are acting pursuant to express orders of the House does not bar judicial review of the constitutionality of the underlying legislative decision." 395 U.S. at 504, 89 S.Ct. at 1955. See also, Dombrowski v. Eastland, 387 U.S. 82, 85, 87 S.Ct. 1425 (1967); Stamler v. Willis, 415 F.2d 1365, 1368 (7th Cir. 1969).

This case is, of course, somewhat distinguishable from *Powell* on the grounds that the report of a Committee of Congress is involved rather than congressional action affecting qualification for office. Defendants argue that the printing of a committee report by the Public Printer is a ministerial function necessary to allow Congressmen to bring their views before the Congress and the public, and hence a function insulated from judicial power. Nothing in the Constitution or the cases suggests, however, that a committee report is a necessary adjunct to speech or debate in Congress. Article I, Section 5, of the Constitution provides that "Each House shall keep a Journal of its Proceedings, and from time to time publish the same * * *," a mandate fulfilled by the printing of the *Congressional Record.* As previously indicated, publication of the Report in the *Congressional Record* cannot be enjoined. Additional printing of a committee report for wide public distribution and sale, however, stands on a wholly different footing. While it is printed and distributed to members of Congress pursuant to statute, 44 U.S.C. § 701 et seq., nothing in the Constitution compels its publication, and its further printing and public distribution is not necessary to give effect to the freedom of Congressmen to speak and debate on

---

3. The Superintendent of Documents is a subordinate of the Public Printer. While the Public Printer is appointed by the President, 44 U.S.C. § 301, he is a legislative employee. Duncan v. Blattenberger, 141 F.Supp. 513, 515 (D.D.C. 1956).

or off the floor. The Speech or Debate Clause does not necessarily bar an action to enjoin the Public Printer from printing a committee report for public distribution.

■ Defendants also argue that this Court lacks jurisdiction because the issue presented involves a "political question," and hence is not justiciable. This question of justiciability cannot, of course, be determined by simple rules or principles. While courts have in a long series of cases found the separation of powers doctrine no bar to judicial review of congressional investigations,[4] defendants suggest that the issue in all these cases was the validity of formal congressional process. Accordingly, the Deputy Assistant Attorney General contended at oral argument that these decisions support the proposition that a Committee of Congress can print in a report anything it pleases, without interference from the judiciary, so long as the information is not gathered by compulsory process. This argument ignores the fact that the use of information, fully as much as the process by which it is gathered, may infringe constitutionally protected freedoms. *Cf.* Menard v. Mitchell (D.C.Cir. June 19, 1970), 430 F.2d 486. The decision to print and widely distribute the Committee Report involved here is no more a "political question" than the decision by the House of Representatives to exclude one of its members reviewed in *Powell.*

Apart from the total privilege afforded by the Speech or Debate Clause, the authority of a congressional committee to publish and distribute a report at public expense is not unlimited but is subject to judicial review in the light of the circumstances presented. In Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957), the Supreme Court considered at length the relationship between congressional investigations and the Bill of Rights. Noting that congressional concern with alleged threats of subversion had brought about a new phase of legislative inquiry involving broad-scale intrusions into the lives of private citizens, it declared that First Amendment rights "may be invoked against infringement of the protected freedoms by law or by lawmaking." Unwilling to assume, as defendants do here, that "every congressional investigation is justified by a public need that overbalances any private rights affected," the Court emphasized that where exposure and invasion of private rights are the result of a legislative inquiry, the inquiry must be justified by a genuine, specific legislative need.

No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress. Investigations conducted solely for the personal aggrandizement of the investigators or to "punish" those investigated are indefensible. 354 U.S. at 187, 77 S.Ct. at 1179.

■■ Thus the issues here presented necessitate consideration of the legislative purpose underlying the Report, if any be shown. Judicial inquiry into the matter of legislative purpose must be undertaken with caution and great deference to the regularity of actions by a coordinate branch of government. No precise guidelines have been laid down by prior decisions concerned with this troublesome question. Congress to be sure has wide powers to investigate and report in aid of legislation, but where its

---

4. *See, e. g.,* Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957) ; Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959) ; United States v. Rumely, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770 (1953) ; Stamler v. Willis, 415 F.2d 1365 (7th Cir. 1969). In Davis v. Ichord, No. 23,426 (D.C.Cir. Aug. 20, 1970), the Court of Appeals rejected the separation-of-powers argument in an action seeking to enjoin the maintenance and use by this same Committee of an alleged "political blacklist." Dismissal of that case was upheld only on the basis that the threatened injury alleged by plaintiffs had by the time the case was decided become so improbable that the controversy was no longer "live."

activities encroach upon constitutionally protected liberties, a subordinating interest of the State must be affirmatively shown. See Barenblatt v. United States, 360 U.S. 109, 127, 79 S.Ct. 1081 (1959).

Each situation must be analyzed on its own special facts. Here the Report not only fails to indicate any legitimate legislative purpose, but on its face contradicts any assertion of such a purpose. While counsel suggests that the Report could have been intended to stimulate legislation concerning the financing of "subversive" organizations, the Committee made no attempt to ascertain whether any honoraria were being channeled to such organizations, and acknowledged that no further inquiry into the matters covered by the Report was contemplated. No proposed or contemplated legislation is mentioned. Nor could the listing of names of speakers possibly be relevant to an inquiry concerning finances, and yet the list comprises the heart of this Report. The appeal is to college administrators, alumni and parents, not to members of Congress. The conclusion is inescapable that the Report neither serves nor was intended to serve any purpose but the one explicitly indicated in the Report: to inhibit further speech on college campuses by those listed individuals and others whose political persuasion is not in accord with that of members of the Committee.

■ If a report has no relationship to any existing or future proper legislative purpose and is issued solely for sake of exposure or intimidation, then it exceeds the legislative function of Congress; and where publication will inhibit free speech and assembly, publication and distribution in official form at government expense may be enjoined. This is such a report.

The Court recognizes that an injunction against public printing and distribution of the Report, except through the *Congressional Record,* will not prevent distribution and discussion of the so-called "blacklist." There are limits to judicial power just as there are limits to congressional committee action under our tripartite form of government.

The Court is impelled to exercise its discretion in favor of an injunction, limited though it may be, for several reasons. These are times of stress when our most cherished institutions are threatened by extremists of many different persuasions. It is in these circumstances that the right of free speech and assembly must be jealously safeguarded by all branches of government to the end that the interchange of ideas and discussion, not violence, shall fashion the future of this democracy. There are undoubtedly individuals who would destroy our institutions and form of government. If any of them are listed in this Report, our Constitution nevertheless preserves their right to speak even though their acts may be restrained. It is alien to any legitimate congressional function, as well as contrary to our most established traditions, for any Committee of the Congress to disseminate lists designed to suppress speech. Members of the Committee may speak their minds, and their words will carry added weight because of the great prestige of their high office. They cannot, however, by the mere process of filing a report devoid of legislative purpose, transform these views into official action by the Congress and have them published and widely distributed at public expense.

The Court notes the increasing tendency of the legislative branch to investigate for exposure's sake, and expresses the hope that members of Congress will by rule and attitude limit congressional inquiry to those matters amenable to constitutional legislative action. The Congress, the Judiciary, and the Executive branch properly seek remedies against violent conduct, but the marketplace of ideas cannot be closed and all branches of Government must in the last analysis depend on the common sense of citizens. This is the essence of democracy and it is in times of stress that the fundamental requirement of free speech and non-violent assembly

must be assiduously preserved wherever possible.

The action is dismissed as to all Congressmen named defendants and the Committee's Chief Counsel. The Public Printer and the Superintendent of Documents are permanently enjoined from printing or distributing the Report. The motion latterly made by plaintiffs to show cause why certain defendants should not be held in contempt of the Temporary Restraining Order is denied.

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law.

## ORDER

Plaintiffs' application for declaratory judgment and permanent injunctive relief having, with consent of the parties, come before the Court on affidavits, and the Court, after briefs and full argument, having filed herewith its Memorandum Opinion containing Findings of Fact and Conclusions of Law, it is

Ordered that the Public Printer and the Superintendent of Documents be and each is hereby permanently enjoined from printing and/or distributing, or directly or indirectly causing to be printed or distributed, any copy of a Report of the House Committee on Internal Security captioned "Limited Survey of Honoraria Given Guest Speakers for Engagements at Colleges and Universities" or any portion, restatement or facsimile thereof, provided however that in the event said Report or any part thereof shall be introduced into or be mentioned during the course of proceedings of the House or of the Senate this injunction shall not apply to subsequent normal publication or distribution of the *Congressional Record* in full text, without special reprinting or excerpting of any portion or portions relating to said Report; and it is

Further ordered that the complaint be and it is hereby dismissed as to all parties except the Public Printer and the Superintendent of Documents, and the Temporary Restraining Order previously entered in this case is and shall be dissolved upon the service of this Order on the Public Printer; and it is further

Adjudged and declared that said Report of the House Committee for Internal Security is without any proper legislative purpose and infringes on the rights of individuals named therein as protected by the First Amendment to the Constitution of the United States, and that any publication of said Report at public expense, except as herein provided, is illegal.