**Michael ANSARA et al., Appellants,**

**v.**

**James O. EASTLAND et al.**

**No. 24816.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 25, 1970.

Decided Jan. 11, 1971.

Miss Nancy Stearns, New York City, with whom Messrs. Jeremiah S. Gutman, New York City, and Philip J. Hirschkop, Alexandria, Va., were on the pleadings, for appellants.

Mr. Robert Keuch, Washington, D. C., for appellees. Mr. Benjamin C. Flannagan, U. S. Dept. of Justice, Washington, D. C., also entered an appearance for appellees.

Before TAMM, LEVENTHAL and WILKEY, Circuit Judges.

PER CURIAM:

This case involves a request by two plaintiffs for emergency relief to restrain defendants from taking action pursuant to subpoenas duces tecum issued by the Subcommittee on Internal Security of the Senate Judiciary Committee to plaintiffs. The District Court denied emergency relief. We conclude emergency relief is properly denied.

The plaintiffs describe themselves in their complaint as persons who have actively and openly opposed many of the foreign and domestic policies of the United States Government, particularly the war in Vietnam, and have actively worked with the dissenting press and with persons in or subject to the armed services who are seeking to know and assert their rights.

Defendants are the chairman and the general counsel of the Subcommittee. The subpoenas duces tecum require plaintiffs to attend a hearing on the return date [1] and bring with them correspondence, memoranda, and records of telephone calls, to and from five organizations—an underground newspaper; a G.I. coffeehouse; Students for a

1. This court on November 19, 1970, stayed the subpoenas so that it might have opportunity to consider the issues. The recurrence of the legal problem, and the authority of the Subcommittee to issue a new subpoena, avoids any problem of mootness. Women Strike for Peace v. Hickel, 137 U.S.App.D.C. 29, 420 F.2d 597 (1969).

Democratic Society; a draft resistance group; and a company, in which plaintiffs are officers, that has, as they allege, contributed money to G.I. and other radical political newspapers and other activities.

The complaint seeks declaratory relief that the subpoenas are void and that the Senate Resolutions pursuant to which they were issued [2] are violative of plaintiffs' constitutional rights for various reasons,—as having an overbroad sweep that inhibits and deters freedom of speech, press and assembly, and of association, in violation of the First Amendment; as violative of due process procedural rights; as establishing a mechanism for public exposure, without justification in terms of legislative function, of private beliefs and associations which may be unorthodox or unpopular, resulting in public stigma, scorn and obloquy.

The District Judge held he had no subject matter jurisdiction over the action against Senator Eastland. He denied emergency relief against counsel Sourwine on a number of grounds. We briefly indicate why we conclude emergency relief is properly denied.

■■ First, the plaintiffs seek relief that would precede and seek to relate to the conduct of a future legislative hearing. The courts avoid use of extraordinary remedies that involve "needless friction" with a coordinate branch of the government. Railroad Comm'n. v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Davis v. Ichord, 142 U.S.App.D.C. ——, 442 F.2d 1207 (Aug. 20, 1970). If temporary relief were granted pending trial but the decision eventually were for defendants there would be a delay in the exercise of legislative authority with results that

might not be reversible. This merits judicial consideration along with plaintiffs' claims of irreparable injury.

Thus the case before us is in a different posture from Stamler v. Willis, 415 F.2d 1365 (7th Cir. 1969), cert. denied, Ichord v. Stamler, 399 U.S. 929, 90 S.Ct. 2231, 26 L.Ed.2d 796 (1970), on which plaintiffs rely. Although Stamler's first action was filed before the return date of the subpoena, the legislative hearing was held prior to the decision of the court. So far as relief is concerned, the case came to focus on his second action, to restrain the criminal contempt proceeding, which had become a reality following the legislative hearing. The court's ultimate decision was that the criminal proceeding should be stayed and the issues should be litigated in the pending civil proceeding.

Second, and interrelated with the problem of determining what is "needless friction," is the nature of the constitutional claims. The ongoing legislative process provides opportunity for presentation of plaintiffs' constitutional contentions. Moreover these contentions, which cannot be decided purely by reference to constitutional text, may be affected by the response within the legislative branch.[3] We first note that the plaintiffs will have an opportunity to present their constitutional objections to the Subcommittee. Hence the case is to be distinguished, as Government counsel point out, from one where plaintiffs were not subpoenaed and would have no way to claim their constitutional protections at the time of the committee's questioning.[4]

■ This court cannot assume, as plaintiffs urge, that the members of the committee will fail to give consideration

---

2.  S.Res. 366, 81st Cong., 2nd Sess. (1950) ; S.Res. 341, 91st Cong., 2d Sess. (1970) ; Subcommittees on Internal Security Res. of March 11, 1970.

3.  Thus this case stands in a different posture from Hentoff v. Ichord, 318 F.Supp. 1175 (D.D.C.1970) where the District Court for the District of Columbia granted relief against legislative officials, after dismissing the action against the Congressmen defendants, where there was no occasion for further legislative determination as to the matter in controversy. We of course make no ruling on the issues in Hentoff.

4.  See opinion of Judge Gasch in United States Servicemen's Fund v. Eastland, C.A. No. 1474–70, June 30, 1970.

to constitutional claims they consider may have merit. On the contrary, we may rightly assume that the legislators are sensitive to, and will endeavor to act conformably to, the principle that the Bill of Rights applies to the legislature's investigations as well as to its enactments. Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957). Thus in Shelton v. United States, 131 U.S.App.D.C. 315, 404 F.2d 1292, 1296, 1299–1300 (1968), cert. denied 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1969), we pointed out that the presentation of constitutional claims of unreasonable search and seizure might lead a committee to modify its demand. Moreover, as defendants' counsel pointed out at oral argument, under *Watkins, supra,* the Subcommittee has an obligation to give an explanation in response to a witness's objection.[5] We cannot at this juncture know either what the explanation will be, or what may be the witness's response, or how these may affect the ultimate constitutional issues.

 Furthermore, if the existence of a contempt should be reported by a committee to the Senate (or House), that body will also be invested with jurisdiction to consider the constitutional issues in determining whether to adopt a resolution to certify the contempt to the United States Attorney. See Wilson v. United States, 125 U.S.App.D.C. 153, 369 F.2d 198 (1966). In the words of former Representative, now Senator, Mathias, the House or Senate meets "as committing magistrates," to pass on the request for criminal prosecution. See 125 U.S.App.D.C. at 156, 369 F.2d at 201.

We are aware that the protections available within the legislative branch or elsewhere[6] do not provide a conclusive determination for plaintiffs, as to their constitutional rights, before they are exposed to the risk of criminal prosecution. But in the absence of establishment by Congress of a procedure for advance judicial consideration and declaration, we do not think the courts can soundly interject themselves in cases like this for the purpose of granting emergency relief.

Motion denied.

---

5. See 354 U.S. at 208 ff., 77 S.Ct. 1173 holding that the witness, who faces peril of prosecution for refusal to comply with a subpoena on a matter "pertinent to the question under inquiry" is entitled to be informed of the question under inquiry with the same degree of explicitness and clarity required for criminal prosecutions, and thus enabled to understand the pertinency of the Committee's demand.

6. Perhaps in court, see Stamler v. Willis, *supra;* perhaps in the Executive Branch which may decide not to present the matter to the grand jury (as occurred in the case of the officials of the New York Port Authority); or perhaps in the Grand Jury which may decide not to return a true bill.