**In the Matter of HARRISBURG GRAND JURY—83–2.**

**Misc. No. 83–142.**

United States District Court, M.D. Pennsylvania.

April 1, 1986.

Barbara L. Kosik, U.S. Atty., Scranton, Pa. for U.S. Dept. of Justice.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This matter is before the court in an unusual posture. The United States Department of Justice ("Department") has filed a motion requesting that this court agree to review certain documents subpoenaed by the House Subcommittee on Crime ("Subcommittee").[1] The purpose of this "review" is for the court to determine if the Department would be subject to contempt under Fed.R.Crim.P. 6(e) for releasing the subpoenaed documents. The Subcommittee filed an *amicus curiae* brief asserting this court's lack of jurisdiction over the motion on February 19, 1986. For the reasons set forth below, the Department's motion will be denied.

## DISCUSSION

### I. The Department's Motion

In essence, the Department's motion[2] states, "we are simply asking the court to decide if production of certain information and documents which we (Department) have not as yet produced would run afoul of the secrecy imposed by Rule 6(e) and thus subject the Department to *potential* contempt of court." *See* Document 158 of the Record at 2 (emphasis added). While it is not clear what the Department requests, it is significant that the "Department is not asking this court to conclude that we (Department) do not have to comply with the (Subcommittee's) subpoena." *Id.* Furthermore, the Department states, "nor are we asking the court to order disclosure of material that is subject to Rule 6(e)." *Id. See In Re Grand Jury Matter (Catania)*, 682 F.2d 61 (3d Cir.1982) (Federal government sought an order authorizing disclosure of matters before the grand jury). Moreover, the Subcommittee is not before the court seeking disclosure of grand jury material. *See In Re Grand Jury Matter (Garden Court Nursing Home)*, 697 F.2d 511 (3d Cir.1982) (Commonwealth Department of Revenue petitioned court to examine grand jury material); *In Re Grand Jury Investigation (New Jersey State Commission of Investigation)*, 630 F.2d 996 (3d Cir.1980), *cert. denied*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981) (New Jersey State Commission of Investigation filed motion seeking access to grand jury records). This case clearly is distinguishable in that neither the Department nor the Subcommittee is seeking disclosure or an order prohibiting disclosure. What the Department wants is advice on the proper course to follow.

---

1. The Subcommittee requests:
 1. Pre-existing documents provided to the Department of Justice in the following categories:
 (a) Ledgers, journals, bank statements and bank reconciliation statements for the zero-balance bank accounts which Hutton used to reimburse branch, regional, and corporate bank accounts.
 (b) Profit and loss ledgers, reports, memoranda and other documents of Hutton showing interest income or reduction of interest expense from money management practices.
 2. Letters from the Department of Justice promising not to prosecute Hutton officers and employees, and draft charges, including draft informations, for Hutton officers, employees, or corporate entities.
 3. Memoranda, reports, letters, and internal communications prepared or circulated within, or between, the Department of Justice and the Postal Inspection Service, excepting such parts as reveal matters occurring before the grand jury, relating to
 (a) meetings, telephone conversations, and correspondence either between the Department of Justice and Hutton, or Hutton's officers and employees and their counsel, or else within the Department of Justice, regarding Hutton's money management activities;
 (b) proposals made by or within the Department of Justice, or made on behalf of Hutton or its officers or employees, for disposition of the criminal allegations regarding Hutton money management activities, including plea agreements.
 *See* Document 158 of the Record—Tab A § J.

2. The motion is entitled "Motion of the United States Department of Justice For Review of Certain Documents and Information By the Court to Determine If Production Would Disclose 'Matters Occurring Before the Grand Jury.'"

## II. Constitutional Limitation—Case or Controversy

■ It is axiomatic that "under Art. III of the Constitution, federal court jurisdiction 'depends on the existence of a case or controversy.'" *Blinder, Robinson & Co., Inc. v. United States Securities and Exchange Commission*, 748 F.2d 1415, 1418 (10th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985) *citing North Carolina v. Rice*, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.*" *Id.* (emphasis added) *citing Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). As stated, in this case, the Department is seeking an opinion advising what the court would do if the Department complied with the subpoena. The *potential* for a contempt proceeding does not alter the Department's request for advice.[3] Accordingly, this case presents no case or controversy over which this court has jurisdiction. On this basis alone, the court *must* refuse to exercise jurisdiction over the Department's Motion. As will be discussed, however, additional pragmatic reasons exist which prevent judicial intervention at this time.

## III. Lack of a Justiciable Controversy

■ As a separate, although related matter, the Department's motion does not present a justiciable controversy. Courts should avoid premature intervention in matters which are committed to other branches or agencies of Government. *See e.g., Wearly, W.L. v. Federal Trade Commission*, 616 F.2d 662 (3d Cir.), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 25 (1980). Basically, the Department seeks to circumvent the enforcement procedures contained in 2 U.S.C. §§ 192 and 194 by seeking guidance in this court concerning the validity of the Congressional subpoena. This approach was rejected when the Department attempted to procure a similar advisory opinion. *See In Re Grand Jury Proceedings, Newport News Drydock & Shipbuilding Co.*, (E.D.Va., Oct. 17, 1984). By way of analogy, it is recognized that "resort to a court by recipients of investigative subpoenas before an action for enforcement has commenced is generally disfavored." *Wearly, W.L. v. Federal Trade Commission, supra*, at 665. While preenforcement review of agency subpoenas may be necessary in some circumstances, it must be determined "whether anything in the statute authorizing agency action prohibited preenforcement review." *Id.* at 666. Only then should the court determine whether the controversy was ripe for judicial review. *Id.*

### A. The Department's Motion Seeks Review of a Congressional Subpoena Outside the Prescribed Statutory Framework.

■ Congressional committees have the power to compel the production of documents via Congressional subpoenas as long as the material is pertinent to the matter under inquiry. *See e.g., Watkins v. United States*, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957). The Department does not contend that the Subcommittee lacks authority to conduct the instant investigation or that the subpoena in question is not within this investigatory power. On the other hand, the Department maintains that certain requested material may be protected by the secrecy provisions of Fed.R.Crim.P. 6(e).[4] It appears, therefore, that the Department seeks to test the valid-

---

3. As will be discussed further in this Memorandum, no contempt proceedings have been initiated against the Department.

4. There is serious doubt whether the secrecy requirements in Rule 6(e) apply to the information requested by the Subcommittee. As to the first category of documents requested, it appears that pre-existing documents would not reveal matters "occurring before the grand jury." The protection afforded by Rule 6(e) extends only to documents which may reveal what occurred before the grand jury. *See Catania, supra.* The Subcommittee seeks pre-existing documents compiled by E.F. Hutton in the course of business, which are now in the possession of the Department. The mere fact that

ity of the Subcommittee's subpoena in this court by attempting to bypass the procedures set forth in 2 U.S.C. §§ 192 and 194.

 The United States House of Representatives has the power to punish a witness for contempt for refusing to produce documents pursuant to a Congressional subpoena.[5] *See* 2 U.S.C. § 192. A statutory method is prescribed under which prosecutions for contempt of Congress are

these documents were subpoenaed by or reviewed by the grand jury would not convert them into matters occurring before the grand jury for purposes of Rule 6(e). *See New Jersey State Commission of Investigation, supra; United States v. DiBona,* 601 F.Supp. 1162 (E.D.Pa. 1984); *United States v. Monsour,* 508 F.Supp. 168 (W.D.Pa.1981). In contrast, the documents subpoenaed by the Subcommittee may be viewed as existing independent of the grand jury process. *See Catania, supra.* Many business records are created for purposes independent of a grand jury investigation and these documents have legitimate uses unrelated to the grand jury. *See New Jersey State Commission of Investigation, supra.* This determination, however, cannot be made because of the jurisdictional deficiencies in the Department's motion.

The second category of material requested contains certain immunity letters and draft pleadings. The requested immunity letters and draft pleadings may not constitute grand jury matter. *See Catania, supra,* at 64 n. 4 (draft indictments fall outside the protection of 6(e)). The Department has not submitted the specific documentation to the court demonstrating how these materials would reveal what occurred before the grand jury. The Department contends that the draft indictment in question does not exist independently of the grand jury process and that it would reveal names of individuals who were investigated by the grand jury, but not charged. In *Catania, supra,* the court recognized that draft indictments may fall outside the protections of 6(e) even though they were prepared *after* grand jury deliberations and might, in fact, be based on *knowledge of the grand jury proceeding.* As to the Department's second contention, as the Subcommittee discloses, the draft indictment was a "working document" which was shown to Hutton's attorneys primarily as a "scare tactic." *See* E.F. Hutton Mail and Wirefraud Case: Hearing Before Subcommittee on Crime of the House Committee on the Judiciary, 99th Cong., 1st Sess. 146–47 (December 6, 1985) (Statement of Assistant United States Attorney Albert Murray). Moreover, various individuals who received "target letters" were identified by name, *id.* at 25–27, and, therefore, it is no "secret" that these individuals were under investigation. Thus, the court cannot generally determine if the Department would be subject to potential contempt of court should they release this document. Again, neither the Subcommittee nor the Department has properly placed this issue before the court for determination.

Finally, the Subcommittee requests various documents concerning the Department's Hutton Investigation. This request, however, specifically *excludes* such parts as reveal matters occurring before the grand jury. A document not revealing what occurred before the grand jury is not within the ambit of 6(e). *See Catania, supra.* As previously noted, just because a document was subpoenaed by the grand jury does not render it a matter occurring before the grand jury. *See New Jersey State Commission of Investigation, supra.* Only the Department, given that they have possession of the documents, can determine what will reveal matters occurring before the grand jury. It is unrealistic to expect the court to give blanket protection to the Department or to undertake an individual analysis of each document involved. Literally millions of documents may be implicated and while the Department reluctantly has made a limited attempt to produce material clearly not covered by Rule 6(e), *see* Document 158–Tab A § K, it still seeks a generic determination as to the proper course to follow concerning the remaining documents. This approach fails to present the court with a concrete issue capable of judicial resolution. Moreover, "once the grand jury has completed its work, and indictments have been returned, the reasons for secrecy obviously become less compelling and disclosure of grand jury matters is warranted when justice so requires." *United States v. Boffa,* 513 F.Supp. 444, 495 (D.Del.1980). In this case, the grand jury in question has been dismissed. While reasons for secrecy still remain, they are less compelling than if the grand jury were still in session.

5. The statutory provision provides:

Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months.

2 U.S.C. § 192.

to be undertaken.[6] *See* 2 U.S.C. § 194. In *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), respondents sought a permanent injunction restraining the Chief Counsel and a Senate Subcommittee from trying to enforce a subpoena by contempt of Congress. In addition, respondents attempted to prevent the party to whom the subpoena was directed from complying with the subpoena. The Supreme Court recognized that the court of appeals "correctly held that the District Court properly entertained this action initially." *Id.* at 501 n. 14, 95 S.Ct. at 1820 n. 14. In so doing, however, the Supreme Court noted the difference between cases when the subpoena seeks information directly from a party and those cases when the subpoena seeks the same information from a third person. *Id.* In the latter case, the traditional route of raising defenses by refusing compliance and testing the legal issues in a contempt proceeding is unavailable to the person against whom the information is sought. *Id.* at 498, 95 S.Ct. at 1818 *citing Ansara v. Eastland*, 442 F.2d 751 (D.C.Cir.1971). In other words, when the subpoena seeks information directly from a party, that person can resist and thereby test the subpoena. *Id.* at 501 n. 14, 95 S.Ct. at 1820 n. 14.

**6.** The statute states:

Whenever a witness summoned as mentioned in section 192 of this title fails to appear to testify or fails to produce any books, papers, records, or documents, as required, or whenever any witness so summoned refuses to answer any question pertinent to the subject under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee or subcommittee of either House of Congress, and the fact of such failure or failures is reported to either House while Congress is in session, or when Congress is not in session, a statement of fact constituting such failure is reported to and filed with the President of the Senate or the Speaker of the House, it shall be the duty of the said President of the Senate or Speaker of the House, as the case may be, to certify, and he shall so certify, the statement of facts aforesaid under the seal of the Senate or House, as the case may be, to the appropriate United States attorney, whose duty it shall be to bring the matter before the grand jury for its action.

In the case *sub judice*, the Department may raise the applicability of Rule 6(e) in any proceeding initiating or attempting to prosecute the Department, or officers acting on its behalf, for contempt.[7]

In *Ansara v. Eastland, supra*, the court recognized the general principle that courts avoid "needless friction" with a coordinate branch of government. The court found the "ongoing legislative process provides opportunity for presentation of plaintiffs' constitutional contentions" and denied a request to restrain a Senate Subcommittee from taking action pursuant to a subpoena *duces tecum*. *Id.* at 753. As the court stated:

We first note that the plaintiffs will have an opportunity to present their constitutional objections to the Subcommittee.... This court cannot assume, as plaintiffs urge, that the members of the committee will fail to give consideration to constitutional claims they consider may have merit.... Furthermore, if the existence of a contempt should be reported by a committee to the Senate (or House), that body will also be invested with jurisdiction to consider the constitutional issues in determining whether to

2 U.S.C. § 194. Additionally, both houses of Congress appear to possess inherent authority to punish contempt of their orders by civil contempt proceedings in the legislative forum. *In Re Grand Jury Investigation of Ven-Fuel*, 441 F.Supp. 1299, 1307–08 (M.D.Fla.1977).

**7.** The materials subpoenaed are either the property of the Department or E.F. Hutton. Those documents belonging to Hutton are described in the subpoena as pre-existing documents made in the course of Hutton's business. Accordingly, the Subcommittee is not seeking grand jury documents owned by third persons, other than Hutton, now in the possession of the Department. Apparently, Hutton would not object to the Department complying with the subpoena. In fact, an agreement was reached whereby Hutton would copy documents in the Department's possession and then turn over those copies to the Subcommittee. *See* Document 158—Tab A §§ E & G (Letters of AAG Trott to Chairman Hughes); Document 162—Exhibits 10 & 12.

adopt a resolution to certify the contempt to the United States Attorney.

*Id.* at 753–54.

 Likewise, in the present situation, the Subcommittee ultimately may decide not to report any contempt to the full House should the Department fail to turn over the requested documents. Additionally, if the contempt is reported to the House, the House may decide not to adopt a resolution certifying the contempt to the United States Attorney. The court in *Ansara* recognized, "the House ... meets 'as committing magistrates', to pass on the request for criminal prosecution." *Id.* at 754 (citation omitted). In both scenarios, the anticipated harm to the Department will not occur. Moreover, even if the contempt is certified to the United States Attorney, the *Ansara* court identified situations when the Executive Branch may decide not to present the matter to the grand jury or when the grand jury may decide not to return a true bill. *Id.* at 754 n. 6. In sum, the procedures established by Congress when a party refuses to produce documents pursuant to a Congressional subpoena preclude this court from prematurely deciding if the Department must comply with the subpoena. As the *Ansara* court held:

> We are aware that the protections available within the legislative branch or elsewhere do not provide a conclusive determination for plaintiffs ... before they are exposed to the risk of criminal prosecution. But in the absence of establishment by Congress of a procedure for advance judicial consideration and declaration, we do not think the courts can soundly interject themselves in cases like this for the purpose of granting emergency relief.

*Id.* at 754. *See also Sanders v. McClellan,* 463 F.2d 894, 899 (D.C.Cir.1972) (witness's claims of protection from Congressional subpoena could be raised before trial court if and when an indictment for contempt is returned; alleged threat to First Amendment right of Freedom of the Press was insufficiently concrete and compelling to

warrant judicial interruption of the Congressional contempt procedure). Therefore, the statutory scheme concerning Congressional subpoenas prohibits this court from intervening before Congress has an opportunity to act.

**B. The Department's Motion is Not Ripe for Judicial Determination.**

 Similarly, this matter is not ripe for judicial determination. In this regard, two (2) factors must be addressed: the fitness of the issues for judicial resolution and the potential hardship to the parties in the event the court were to withhold review. *Wearly, W.L. v. Federal Trade Commission, supra,* at 666. As to the first part of the analysis, the court should determine if the complained of action is final in that no further factual development is required. *Id.* In this case, the Congressional subpoena may be reviewed in any proceeding seeking to enforce the subpoena by way of contempt. Thus, facts will be developed in those proceedings and judicial intervention at this time is unwarranted. *Id.* at 667 (party free to await enforcement proceedings and could raise objections at that time; plaintiffs failed to establish that decision whether to comply with FTC subpoena placed them on the "horns of a dilemma"). The Department seeks a generic determination as to the applicability of Rule 6(e). This generalized approach is insufficient given the fact that a court must determine whether a specific document would reveal matters occurring before a grand jury. As discussed, on its face the Subcommittee's subpoena appears to request materials that would not reveal what occurred before the grand jury. *See supra* at 46–47 n. 4. Without the benefit of further factual development, the court cannot make a broad determination concerning whether the Department may be subject to contempt if they comply with the subpoena. Certainly, should contempt proceedings be initiated, either for complying with or failing to comply with the subpoena, the specific document(s) in question would have to be analyzed. At this point, a court may be presented with a matter capa-

ble of judicial resolution. In any event, that scenario is not present in this case.

■■■■ As discussed, the court realizes that the "potential" hardship to the Department may never occur. A similar result was reached in *United States v. House of Representatives*, 556 F.Supp. 150 (D.D.C. 1983). *See In re Grand Jury Proceedings, Newport News Drydock & Shipbuilding Co., supra.* The facts in the District of Columbia case are similar to those presented here. The court found that "the statutory provisions concerning penalties for contempt of Congress, 2 U.S.C. § 192 and § 194, constitute 'an orderly and often approved means of vindicating constitutional claims arising from a legislative investigation.'" *Id.* at 152. "Constitutional claims and other objections to congressional investigatory procedures may be raised as defenses in a criminal prosecution." *Id.* Thus, the court recognized "courts have been extremely reluctant to interfere with the statutory scheme by considering cases brought by recalcitrant witnesses seeking declaratory and injunctive relief." *Id.* In that case, the court held that judicial resolution of the constitutional issue would not be necessary unless the person subpoenaed became a defendant in either a criminal contempt proceeding or other legal action taken by Congress. *Id.* at 153. In this case, it may be that Congress would forego instituting contempt proceedings should the Department not comply with the Congressional subpoena. This "contingency" renders the instant matter incapable of judicial resolution at this time.[8] *See also Peoples Bank of Danville v. Williams*, 449 F.Supp. 254 (W.D.Va.1978) (plaintiffs may

challenge form and extent of subpoena in SEC enforcement action; lack of equity jurisdiction). *Cf. In Re Grand Jury Impanelled October 2, 1978*, 510 F.Supp. 112 (D.D.C.1981) (Subcommittee opposed Department's interpretation of Rule 6(e); court entertained Department's motion seeking guidance; justiciability issue not discussed). Accordingly, this case is distinguishable from those situations where the Department seeks an order authorizing disclosure, *see Catania, supra,* or when a Subcommittee seeks authorization for disclosure of documents presented to a grand jury.[9] *See In Re Grand Jury Investigation of Ven-Fuel*, 441 F.Supp. 1299 (M.D. Fla.1977). If the Department persists in maintaining that certain documents can be withheld pursuant to Rule 6(e), that position may be tested, if at all, in an appropriate court, with a proper factual predicate established. The instant motion seeks a generalized determination which, pursuant to Constitutional standards, this court cannot make and which, for pragmatic reasons, the court is unable to resolve. Therefore, the Department's Motion will be denied.

An appropriate Order will enter.

---

**8.** While individuals may petition a court for sanctions against Government attorneys for a violation of Fed.R.Crim.P. 6(e), *see Lance v. United States Department of Justice*, 610 F.2d 202 (5th Cir.1980), no such petition has been filed in this case. Indeed, a petition for sanctions requires that the Government attorneys *actually* reveal matters occurring before the grand jury. *Id.* at 214. *See United States v. Cardall*, 773 F.2d 1128 (10th Cir.1985) (secrecy of Rule 6(e) enforced by sanction specifically provided in rule—contempt of court). If the Department fails to reveal the material, it may then raise Rule 6(e) as a defense in a potential

contempt proceeding. Should a party object and petition the court for sanctions, if and when the Department complies with the subpoenas, the Department may litigate the Rule 6(e) issue in that proceeding.

**9.** The court's holding is not predicated on Speech and Debate Clause immunity for members of Congress. Consequently, as the Department recognizes, *Eastland* is inapplicable insofar as that case discusses the Speech and Debate Clause. *See* Document 164 of the Record at 17–20.