**In the Matter of HEARINGS BEFORE THE COMMITTEE ON BANKING AND CURRENCY OF THE UNITED STATES SENATE.**

United States District Court
N. D. Illinois, E. D.
Oct. 25, 1956.

R. Tieken, U. S. Atty., pro se, Chicago, Ill.

Matthew Hale, Counsel, Committee on Banking & Currency, U. S. Senate, Washington, D. C.

Williams & Leonard, Chicago, Ill., John M. Leonard, Jr., Chicago, of counsel, for Edward Hintz.

SULLIVAN, Acting Chief Judge.

Under a resolution adopted by it on July 27, 1956, the Committee on Banking and Currency of the United States Senate is conducting an investigation into conditions in the banking business in Illinois. As a part of this investigation, it wishes to examine a certain record or ledger kept by Edward A. Hintz ("Hintz"), formerly President of the Southmoor Bank and Trust Co., which apparently recorded the activities in an irregular account maintained at that bank by Orville E. Hodge, then Auditor of Public Accounts of the State of Illinois. This document is at the moment (at least in its original form, there appear to be numerous copies) in the custody of the United States Attorney, Robert Tieken, who has refused to allow the Committee to inspect it on request. A motion has accordingly been made by the Committee requesting that he be directed by the Court to permit inspection of the ledger and to supply the Committee with a true and correct copy of it.

In an attempt to clarify the positions of the various parties, a hearing was held on the motion at which Mr. Hale, Counsel for the Committee, Mr. Leonard, Counsel for Hintz, and Mr. Tieken were present. The United States Attorney stated that the original was brought to his office voluntarily for use by the Grand Jury, and that he holds it "as custodian for one of the Federal Grand Juries"; that he will eventually return it to Hintz since "they are his records fundamentally." In the meantime, he is willing to give Hintz a photostatic copy of the document, and in open court handed such a copy to Mr. Leonard as Hintz's representative, who in turn refused to surrender it. Since a stalemate appeared to have been reached, the Court requested all counsel to file memoranda setting forth their positions; this has been done, and the questions have been extensively briefed.

The conflict here is between the Committee and the United States Attorney: the Committee insists that it has a right to inspect the original record and to have a copy supplied to it by Mr. Tieken; apparently it wants no part of the copy handed to Mr. Leonard in court. Mr. Tieken resists the motion on the grounds that production of the record by him would be a violation of the traditional secrecy of grand jury proceedings. He apparently draws a distinction between the original and a copy. As to a photostatic copy, his position is that Hintz is entitled to one, at any time he requests it, and he asserts that to give such copies to persons presenting material to the grand jury is the established policy of his office. As to the original, Mr. Tieken feels that it is for the moment part of the grand jury records, of which he is the custodian.

The Committee's motion, as has been noted, also draws this destinction, asking that it be supplied with a copy, and allowed to inspect the original. Considering the request for a copy first, it is apparent that so far as this is concerned Mr. Tieken's involvement in the affair is merely incidental: if, as well might have happened, he had given Hintz a copy, he would not be concerned at all. The Committee's request that he turn over to it a copy which he admits rightfully belongs to Hintz is thus not actually a request that he act as United States Attorney, but only as custodian for Hintz. The question then is whether the Committee has power to compel Hintz to produce the copy; since, if it could so compel him, it surely can compel his custodian.

 Mr. Leonard refused to turn over to the Committee's counsel the copy given him in court by Mr. Tieken, and has filed a memorandum on the subject which must be taken to refer to the copy, since this is all that is within Hintz's power to produce. The memorandum filed on behalf of Hintz makes no objection under the Fifth Amendment, and relies entirely on the argument that a revelation of the contents of the document would be a violation of the secrecy of the grand jury.

So far as Hintz is concerned, the argument is without merit. Fed.Rules Crim. Proc. Rule 6(e) 18 U.S.C.A. imposes an obligation of secrecy on a "juror, attorney, interpreter or stenographer". No secrecy is imposed on witnesses, and indeed could not be, 18 U.S.C.A. Notes of Advisory Committee on Rules, Rule 6(e). So far as a copy of the document is concerned, therefore, in the absence of any claim under the Fifth Amendment, or that it is irrelevant to the Committee's investigation, the motion should be granted.

■■ The same reasoning might well be applied to the original, since Mr. Tieken agrees that it is Hintz's property and will be returned to him. Conversely, the discussion which follows applies equally to the copy. Mr. Tieken states that he feels that under F.R.C.P. Rule 6(e) he is unable to allow an inspection of the original document, and further that this court is without power to compel him to do so. He relies on the following sentence from that rule: "Otherwise a juror, attorney * * * may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding"; and his argument is that since a Congressional inquiry is not a "judicial proceeding" the court has no power to direct disclosure. The Committee, in turn, does not contend that theirs is a judicial proceeding, but does insist that a ledger or document which has been presented to a grand jury is not a "matter occurring" before it.

An examination of the cases in which the question of the secrecy of grand jury proceedings is involved supports the position of the Committee. However decided, they were all concerned with a request for a revelation of what was said or done before the grand jury. Thus a defendant charged with perjury before the grand jury wishes to know all that he said before that body, United States v. Remington, 2 Cir., 1951, 191 F.2d 246; the government may want to refresh the recollection of a witness by showing him what he said, United States v. Socony-Vacuum, 1939, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; or to introduce evidence of a confession made before the grand jury, Metzler v. United States, 9 Cir., 1933, 64 F.2d 203; a Commissioner of Police wishes to know what evidence was introduced against a police officer, In re Bullock, D.C.1952, 103 F.Supp. 639; or a defendant plans to attack an indictment by showing that the evidence submitted to the grand jury was insufficient to support it, United States v. Violon, C.C.S.D.N.Y.1909, 173 F. 501.

In these and many similar cases, it was important to know what "occurred" before the grand jury precisely *because* it happened there and nowhere else. In other words, what may not be revealed is what was presented to the grand jury in that capacity. On the other hand, when the fact or document is sought for itself, independently, rather than because it was stated before or displayed to the grand jury, there is no bar of secrecy. Thus in State v. Kemp, 1928, 124 Conn. 639, 1 A.2d 761, defendants asked to inspect the minutes of the grand jury; their claim and the court's ruling are indicated in the following quotation:

"They state in their briefs that witnesses before the grand jury were sworn to secrecy and that the defendants cannot therefore ascertain from those witnesses facts relevant to their defense. That is clearly a misunderstanding of the situation. The oath would prevent such witnesses from disclosing what took place in the grand jury room, including the testimony they or others there gave. But it would not prevent them if they so desired from giving to the defendants any information they might have relevant to the prosecution even though it was the same information as to which they testified before the grand jury." 1 A.2d at pages 763–764.

A comparable situation is described in McMorries v. State of Texas, 1955, 161 Tex.Cr.R. 608, 279 S.W.2d 90, 92:

"By Bill of Exception No. 2, appellant complains of the state being allowed to prove on cross-examination of the witness Dyer that he was a member of the grand jury that indicted appellant and that he had seen the check on which this case is based, over his objection that it was in violation of the statutes prohibiting the disclosure of evidence before a grand jury * * *.

"This bill does not show that the witness saw a check in the grand jury room, or that he disclosed any matter in his testimony that occurred in the grand jury room. We perceive no error in this bill."

In the instant case, similarly, the Committee is not asking whether the document was used in any way by the grand jury, nor who said what about it, nor inquiring as to any other facet of the grand jury proceedings. It is asking only to see a document which has at some time or other, for some reason or other, been shown to a grand jury. That the secrecy of the proceedings of, or "matters occurring before" the grand jury are not involved here is clear.

For this reason, the motion will be granted. It must be pointed out, however, that the only objection to the motion urged by the United States Attorney was that the secrecy of the grand jury could not be invaded since this is not a judicial proceeding. He has not indicated that examination of the document in question will in any way interfere with the work of any grand jury, or impede any current investigation. Although the grand jury which apparently saw the ledger may still be in existence, it is a matter of record in this court that Edward A. Hintz and Orville E. Hodge have pleaded guilty to and have been sentenced for a charge which involved this transaction, United States v. Hintz and Hodge, No. 56 CR 444.

Not only the absence of any such objection, but other factors as well indicate the granting of the motion in this particular instance. Primary among these is that the United States Attorney has already given copies of the document to Mr. Hodge's lawyer, and to Mr. Leonard, counsel for Hintz, and, particularly, that what purports to be a copy of it appeared in a local newspaper on the day this motion first came before this court. At this stage, it is difficult to see how the Committee's examination of it can harm anyone.

The motion of the Committee that it be allowed to inspect the original, and that it be supplied with a true and correct copy will be allowed.