**Rubylee DAVIS et al.**

v.

**George W. ROMNEY, Individually and in his capacity as Secretary of Housing and Urban Development, et al.**

**Civ. A. No. 71–198.**

United States District Court,
E. D. Pennsylvania.

May 10, 1972.

George D. Gould, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Malcolm Lazin, Asst. U. S. Atty., Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

JOHN MORGAN DAVIS, District Judge.

On January 27, 1971, the plaintiffs commenced the above captioned civil action alleging that they were experiencing substandard conditions in houses which they had purchased through mortgages insured by the Federal Housing Authority. At the same time, the plaintiffs initiated discovery by serving interrogatories upon the defendants. A response to these interrogatories either in the form of answers or objections was due pursuant to Rule 33(a) Fed.R.Civ.P.[1] by March 15, 1971 but was not forthcoming, nor was any explanation offered for this failure to act. Ten days after the deadline, plaintiffs' counsel approached Peter Campenella, Esquire, of the General Counsel's office of the Department of Housing and Urban Development (HUD), Philadelphia, and agreed to temporarily withdraw some of the questions set forth in the interrogatories. In return, Campenella agreed that answers to the remaining questions would be submitted by April 8, 1971. Neither by that date nor by a later date subsequently agreed upon, May 4, 1971, had answers

been submitted. On May 12, 1971, under these facts, plaintiffs filed a Motion for an Order Compelling Discovery which was granted by this Court on May 14, 1971. Defendants in response on May 25, 1971, filed a Motion to Vacate our Order of May 14. After hearing oral argument on July 7, 1971, and considering the briefs, the Court denied defendant's Motion on August 18, 53 F.R.D. 247, and ordered answers to be submitted within fifteen days, i. e. by September 2, 1971.

Defendants did proceed to answer some of the interrogatories, but they did not respond to those interrogatories which requested information contained in approximately 23,000 file binders, each of which relates to an individual F.H.A. insured mortgage in Philadelphia. As a result, the plaintiffs filed a Motion for Contempt of Court and Sanctions against the defendants. A meeting was subsequently held between the parties at which defendants agreed to begin supplying the information requested. Before this agreement was fulfilled, however, the defendants filed a Motion for a Protective Order pursuant to Rule 26(c) Fed.R.Civ.P.[2] This motion is before us now.

In this motion defendants seek alternative relief. Primarily they ask that we revoke our previous two Orders on discovery and deny to plaintiffs the information that will answer their interrogatories. If, however, we do allow plaintiffs to have the information, they

---

1. Rule 33(a) Fed.R.Civ.P. provides in part:

   The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories, except that a defendant may serve answers or objections within 45 days after service of the summons and complaint upon that defendant. The court may allow a shorter or longer time. The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or

   other failure to answer an interrogatory.

2. Rule 26(c) Fed.R.Civ.P. provides in part:

   Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

ask that we keep it from becoming part of the public record and in so doing, prevent its being available to the local press. All of the arguments that defendants present in support of their motion relate to the pending special grand jury investigation into possible criminal conduct with regard to housing sold through F.H.A. insured mortgages.

■■ Before taking up these arguments, however, we make certain observations with respect to discovery. The Rules of Civil Procedure are designed to encourage free and open discovery between the parties and they should be so interpreted. As Mr. Justice Murphy stated in the landmark case of Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947):

> . . . the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiry into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise.

Moreover, pre-trial proceedings of the federal judicial system are conducted in public and become part of the public record unless some compelling reason exists for denying public access to such proceedings. In Essex Wire Corporation v. Eastern Sales Co. Inc., 48 F.R.D. 308, 310 (E.D.Pa.1969), then Chief Judge John W. Lord, Jr., of this District held that in any attempt to keep pre-trial proceedings secret,

> it becomes incumbent upon the defendants to show "good cause" why this information should not be made pub-

lic. Fed.R.Civ.P. 30(b); see United States v. American Optical Co., 39 F.R.D. 580, 586 (N.D.Cal.1966). Moreover, as a general proposition, trial and pre-trial proceedings of the Federal judicial system are ordinarily conducted in public. Fed.R.Civ.P. 43(a); Olympic Refining Co. v. Carter, 332 F.2d 260 (9th Cir. 1964).

Upon the party requesting the Protective Order, defendants in the case at bar, falls the burden of showing "good cause" why it should be issued. In Apco-Oil Corp. v. Certified Transportation Company, 46 F.R.D. 428, 432 (W.D.Mo.1969), the Court characterized this burden as follows:

> It is not necessary to add that the burden of proof will rest upon [party seeking the Protective Order] and that the determination of whether good cause does or does not exist must be based upon appropriate testimony and other factual data, not the unsupported contentions and conclusions of counsel.

We now proceed to consider defendants' arguments seriatum.

## I.

■ According to the defendants, the 23,000 file binders containing the information that plaintiffs seek to discover constitute part of the evidence now before the special investigating grand jury noted above. Consequently, the defendants argue, the cloak of secrecy which enshrouds grand jury deliberations pursuant to Rule 6(e) Fed.R.Crim.P. forbids the disclosure of any information contained in the binders to the plaintiffs, let alone to the public. Rule 6(e) provides to wit:

> Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording

device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons.

We believe that neither Rule 6(e) itself nor the considerations which sustain it suggest its application to the case at bar.

The plaintiffs do not seek to know what use the grand jury made or is making of the binders now before it. They do not wish to know upon whom the grand jury is focusing its attention and for what crimes. They only seek information from binders which now happen to be before the grand jury. In fact, when plaintiffs first asked for the information and when they first became legally entitled to it pursuant to Rule 33(a) Fed.R.Civ.P., these binders were not before the grand jury at all.

The file binders exist as an entity apart from the grand jury; the information contained therein does not reflect upon and is not inextricably intertwined with the deliberation or work of the grand jury. Because of this, disclosure of the information can be accomplished without suggesting some specific act, thought, or focus of the grand jury. No one will know what happened when this material was examined by the grand jury and what was culled from it, if anything. To say as the defendants do, that the grand jury has a Midas like quality in that everything it touches becomes a secret does not comport with the language of the Rule 6(e) which contemplates keeping secret only "matters occurring before the grand jury." Since disclosure will not expose or reveal what "occurr[ed]" when the grand jury examined this material we see no reason for the application of Rule 6(e) to the situation at bar.

The situation at bar is akin to United States v. Interstate Dress Carriers, Inc., 280 F.2d 52 (2nd Cir. 1960) in which a government agency sought records which were being held under a federal grand jury subpoena *duces tecum*. In affirming the District Court decision to allow inspection the Court said at p. 54:

Thus, when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury. In the Matter of Hearings Before the Committee on Banking and Currency of the United States Senate, D.C.N.D.Ill.1956, 19 F.R.D. 410; State v. Kemp, 1928, 124 Conn. 639, 1 A.2d 761.

We agree with this reasoning.

■ Rule 6(e) is designed to obviate certain evils which breaching the secrecy of the grand jury might otherwise occasion. The considerations behind this rule succinctly stated are:

protection of witnesses against reprisals, protection against obstruction of justice and perjury before the grand jury, prevention of flight by persons under investigation, and protection of those who the grand jury ultimately finds are innocent of wrongdoing.

8 Moore, Federal Practice ¶ 6–05 at 6–51 (ed. 1972). We do not believe that disclosure in this situation would offend these considerations because the evils could occur only upon some intimate knowledge of the grand jury's use of the information in the binders.

As we have noted above, disclosure of the information contained in the binders would not reveal whom the grand jury suspects and whom it does not, whom it is seriously investigating and whom it is not, and whom it will indict and whom it will not. Rather disclosure would do no more than reveal the names of those associated with F. H.A. Housing in Philadelphia, along with a record of their work, in a neutral and all inclusive manner. Because all are named and none accused, the reasons why someone would tamper with the grand jury, escape, or otherwise engage in some rash act would not materialize; those named in the binders would know as much as they knew before disclosure and no more, that they were involved in the sale of certain properties through F.H.A. insured mortgages. Furthermore, as this information would appear on the public record of this case it would not sully the character of anyone, especially the character of anyone innocent of wrongdoing. As shall be discussed in more detail below the fact that the local press may abdicate its responsibility to be objective with regard to this material is no reason for keeping it out of the public record of this case. Let us say here briefly that we trust that any reporting based on the public record of this case will be done objectively and factually.

The case at bar must be distinguished from the spate of cases to which Rule 6(e) does apply and to which the considerations behind that rule are of definite relevance. This is not a situation in which the proponents of disclosure seek transcripts of testimony given before the grand jury. Cf. e. g. United States v. Procter & Gamble, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), In re Grand Jury Proceedings, 4 F.Supp. 283 (E.D.Pa.1933), City of Philadelphia v. Westinghouse Electric Corp., 210 F. Supp. 486 (E.D.Pa.1962). Nor is it one in which they seek minutes or records of the grand jury. Cf. e. g. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), United States v. Rose, 215 F.2d 617 (3rd Cir. 1954). Nor further is it one in which proponents seek information gained by the grand jury from a person's records or documents. Cf. In re April 1956 Term Grand Jury, 239 F. 2d 263 (7th Cir. 1956). Nor finally is it one in which they seek "all books, pamphlets, documents, and papers presented to the Grand Jury," United States v. Stein, 18 F.R.D. 17 (D.C.N.Y.1955), or "a list of the documents . . . to be inspected by the Grand Jury". Application of State of California to Inspect Grand Jury Subpoenas, 195 F.Supp. 37, 40 (E.D.Pa.1961). In each of the cases cited above, the proponents sought to inquire into the grand jury's work either by examining its transcripts, records, or minutes or by ascertaining what specific documents passed before it. Disclosure would in those cases suggest some specific act, thought, or focus of the grand jury, hence the application of Rule 6(e) by the courts.

None of the situations presented in those cases is our situation. Not even the situation in the *Stein* or *Application of California* cases can be considered similar to that in the instant case because here plaintiffs seek information from binders which happen also to be before the grand jury, while in those cases, the proponents of disclosure sought to know exactly what documents the grand jury was using. While a list of all documents before the grand jury might suggest its focus, one set of documents will not, especially when nothing is known as to what role these documents play in the grand jury's work or deliberation.

We find no basis in defendants' Rule 6(e) argument to warrant the issuing of a Protective Order.

## II.

The United States Attorney's Office is acting as the agent of defendant Department of Housing and Urban Development in handling and keeping the 23,000 file binders at issue here. The U.S. Attorney's Office is also involved in the criminal prosecutions which resulted from the civil action before us. Defendants argue that if the Court ordered discovery to proceed normally, in releasing the information contained in the binders, the U.S. Attorney's Office would be violating Local Rule 43(a) (1). Local Rule 43(a) (1) provides, to wit:

It is the duty of the lawyer not to release or authorize the release of information or opinion for dissemination by any means of public communication, in connection with pending or imminent criminal litigation with which he is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

■ This argument is irrelevant to the case at bar because Local Rule 43(a) (1) is directed to attorneys and not to the Court. This Rule in no way affects the right of a Judge to order discovery to proceed in a civil action in the manner required by the Federal Rules of Civil Procedure and case law. Moreover, if this Court does order discovery to proceed, the U.S. Attorney's Office still would not fall within the purview of the rule, which contemplates only *voluntary* dissemination of information. This is not the situation here where the information would be turned over under Court order.

We find no basis in defendants' Local Rule 43(a) (1) argument to warrant our issuing a Protective Order.

## III.

*The Code of Professional Responsibility* of the American Bar Association sets up standards by which lawyers should deport themselves in their profession. It requires counsel to be circumspect in the kinds of extra-judicial statements they make with respect to cases in which they are involved. Defendants argue that to prevent plaintiffs' counsel from making extra-judicial statements, we should order that information from the binders not be made part of the public record.

*The Code of Professional Responsibility* has no bearing whatsoever on the method by which discovery should proceed or whether the information turned over through discovery should become part of the public record. While we do believe that plaintiffs' attorneys should carefully read *The Code of Professional Responsibility* again and take care as to what they themselves disseminate to the media, we realize that they have no control over the public record of this case.

■ Whether information gathered through discovery should become part of the public record is a matter entirely ouside the scope of *The Code of Professional Responsibility*. We find no basis in this argument to warrant our issuing a protective order.

## IV.

■ The F.H.A. Housing program in Philadelphia has been subject to much publicity in the local press, which means that if the information contained in the file binders is made part of the public record, it will probably be seized upon as material for further articles in the newspapers. For this reason, the government argues (1) that an atmosphere may be created in which persons indicted by the grand jury might not receive a fair trial and due process of law as guaranteed by the Constitution and (2) that the privacy of those individuals who

are named in the binders but not indicted would be violated. We recognize these difficulties that could arise by permitting the press access to the information through the public record, but feel that the issue before us is the same as that faced by Senior (and former Chief Judge) John W. Lord, Jr., in Philadelphia Newspapers Inc. v. Department of Housing and Urban Development et al., 343 F.Supp. 1176 (E.D.Pa., filed March 9, 1972): "While this is not . . . the classic case of prior restraint, it approaches it." We note as did Judge Lord:

[L]iberty of the press, historically considered and taken up by the Federal Constitution, has meant, principally although not exclusively, immunity from previous restraints or censorship.

Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

■■■ The burden of proof lays heavily upon the party seeking imposition of such restraints. Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). This is so because "[a]ny system of prior restraints of expression comes to [a court] bearing a heavy presumption against its constitutional validity." Bantam Books Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

As to their fair trial argument, defendants foresee this case falling into the same mire of sensationalism in which the criminal cases of Doctor Sam Sheppard and Billie Sol Estes floundered. The adverse publicity in both cases was condemned by the Supreme Court. See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) and Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). These cases, however, are most unusual; the great majority of cases are reported in the press with no resulting ill effects. It is basic to our system of justice that criminal cases be carried on in public to avoid the dangers inherent in secret trials such as were carried on in the Star Chamber. We note what the court said in United States v. Kline, 221 F.Supp. 776, at p. 786 (D.C.1963):

In connection with this whole subject of claimed adverse publicity affecting the fairness of a trial, it should be recalled that factual news reporting does not of itself create a prejudicial atmosphere. Reynolds v. United States, 225 F.2d 123 (5th Cir.), cert. denied, 350 U.S. 914, 76 S.Ct. 197, 100 L.Ed. 801 (1955), reh. denied, 350 U.S. 929, 76 S.Ct. 301, 100 L.Ed. 812 (1956). It would be a practical impossibility in this modern age to conduct a trial involving persons or subjects well known in the community without the consequent publicity.

We do not believe that the press will approach this case with the same spirit of sensationalism with which it approached the Sheppard and Estes cases. If it does however, criminal defendants do have methods by which to protect themselves from the effects of adverse publicity. They may seek a change in venue or a delay in the trial. Further, they may vigorously question jurors on voir dire as to what they read and their reaction to it. Even if adverse publicity results, which is by no means certain, defendants can still receive a fair trial.

As to the rights of those who are not indicted we note the holding in Konigsberg v. Time, Inc., 288 F.Supp. 989 (S.D.N.Y.1968):

To enjoin any publication, no matter how libelous, would be repugnant to the First Amendment to the Constitution, Crosby v. Bradstreet Co., 312 F.2d 483 (2d Cir. 1963); Parker v. Columbia Broadcasting System, Inc., 320 F.2d 937 (2d Cir. 1963); cf. Near v. State of Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), and to historic principles of equity. American Malting Co. v. Keitel, 209 F. 351 (C.C.A. 2, 1913).

If they are characterized wrongly by the press, which is, again by no means certain, they do have a remedy in common law libel.

By suggesting only *possible* difficulties that could result from allowing the press access to the information through the public record, the defendants have not sustained the heavy burden required for prior restraint. We concur in Judge Lord's conclusion in the *Philadelphia Newspapers* case:

> New York Times Co. v. United States, 403 U.S. 713, [91 S.Ct. 2140, 29 L.Ed. 2d 822] (1971) teaches, *inter alia*, that the mere labeling of a proceeding as one best kept remote from the public eye is not sufficient, particularly where, as here, the danger is remote. As Justice Black stated in his concurring opinion [at p. 715, 91 S.Ct. 2140]:
>
>> [F]or the first time in the 182 years . . ., the federal courts are asked to hold that the First Amendment does not mean what it says, but rather means that the Government can halt the publication of current news of vital importance to the people of this country.
>
> * * * * * *
>
> Here, as in the *New York Times* case, the government's claims are that the material sought "could" or "might" or "may" prejudice those about whom it speaks. And here, too, we reject that as entirely unacceptable. *See*, concurring opinion of Justice Brennan, 403 U.S. at 725–726, [91 S.Ct. 2140].

We find no basis in these arguments to warrant our issuing a Protective Order.

We have reviewed defendants' arguments and have found them to be without merit. Accordingly, we shall deny defendants' Motion for a Protective Order. Defendants shall within fifteen (15) days supply plaintiffs with the information that will fully answer their interrogatories. This information shall become part of the public record. Plaintiffs, by patiently waiting for this information since March 15, 1971, when they were first entitled to it, have demonstrated their faith in our system of law and government. It is now time for the defendants, who are part of the government, to honor that faith.

Last September, when defendants did not comply fully to our Order of August 18, 1971, plaintiffs filed a Motion for Contempt of Court and Sanctions. We shall await the defendants' response to the Order which follows this Opinion before rendering a decision on that Motion.

Before concluding, we deem it necessary to add an observation. The information that plaintiffs receive as part of the public record will be available to the press. We trust that it will handle the material in an objective and factual manner. The press has a vital role to play in insuring that government serves the people. As Chief Justice Hughes stated in Near v. Minnesota, *supra*, 283 U.S. at pp. 719–720, 51 S.Ct. at p. 632:

> [T]he administration of government has become more complex, the opportunities for malfeasance and corruption have multiplied, crime has grown to most serious proportions, and the danger of its protection by unfaithful officials and of the impairment of the fundamental security of life and property by criminal alliances and official neglect, emphasizes the primary need of a vigilant and courageous press, especially in great cities. The fact that the liberty of the press may be abused by miscreant purveyors of scandal does not make any the less necessary the immunity of the press from previous restraint in dealing with official misconduct.

If this material is used in a "banner headline" manner to accuse those involved by inference or innuendo, then the press will have abdicated the responsibility that goes with its right to publish freely. If, however, the press

presents the material in an objective and factual way, for substance and not for headlines, then it will be fulfilling its historic function by serving the people of Philadelphia.