## In re GRAND JURY INVESTIGATION OF VEN–FUEL et al.

### No. Misc. 74–22–J.

United States District Court,
M. D. Florida,
Jacksonville Division.

Dec. 1, 1977.

Michael R. Lemov, Chief Counsel, Subcommittee on Oversight and Investigations, Committee on Interstate and Foreign Commerce, U. S. House of Representatives, Washington, D. C., for movant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Benjamin R. Civiletti, Deputy Atty. Gen., Crim. Div., Dept. of Justice, Washington, D. C., for respondents.

## OPINION AND ORDER

CHARLES R. SCOTT, District Judge.

The Honorable John E. Moss, Chairman, Subcommittee on Oversight and Investigations, of the House of Representatives' Committee on Interstate and Foreign Commerce, has moved the Court for an order authorizing disclosure of documents presented to a federal grand jury in Jacksonville, Florida. The documents were presented as part of the government's effort to show probable cause that a criminal offense had been committed, in order to obtain an indictment. An indictment was returned against Ven-Fuel, Inc. on January 14, 1977. (*United States v. Ven-Fuel, Inc.*, 77–15–Cr–J–Y) Chairman Moss specifically requests disclosure of documents other than those relating to the criminal case which might be used as evidence at the trial of that case.

This motion presents two questions: (1) whether the law concerning grand juries, particularly Fed.R.Crim.P. 6(e), forbids disclosure of the documents sought; and (2) whether the House Subcommittee and Chairman Moss have an independent right to obtain the documents sought. For two compelling reasons, discussed as follows, the Court holds that disclosure of the documents is not prohibited by Rule 6(e), and that Chairman Moss and the House Subcommittee are entitled under federal law to the documents.

### I. Grand Jury Secrecy—Disclosure of Documents Presented

▮▮▮▮ Fed.R.Crim.P. 6(e) provides for the secrecy of "matters occurring before the grand jury", unless a court authorizes disclosure for the purposes of a judicial proceeding, or at the request and showing by a defendant that he needs the information to justify dismissal of an indictment. Rule 6(e) codifies the traditional policies underlying grand jury secrecy; but it also remains subject to the exceptions that those policies recognize. *See In re Report & Recommendation of Grand Jury*, 370 F.Supp. 1219, 1229 (D.D.C.1974). The traditional reasons for grand jury secrecy are (1) to prevent potential defendants from fleeing; (2) to guarantee the grand jury's freedom in its deliberations; (3) to prevent subornation or perjury or tampering with witnesses; and (4) to encourage free input and disclosure of information to the grand jury; and (5) to protect the lives and reputations of innocent persons who are exonerated by the grand jury investigations. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399–400, 79 S.Ct. 1237, 1240–1241, 3 L.Ed.2d 1323, 1326–27 (1959); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–82, 78 S.Ct. 983, 985–86, 2 L.Ed.2d 1077, 1081–82 (1958); *In re Report & Recommendation of Grand Jury*, 370 F.Supp. at 1229.

▮▮▮▮ Rule 6(e), however, was not intended to insulate from disclosure all information once it is presented to a grand jury. *United States v. Saks & Co.*, 426 F.Supp. 812, 814 (S.D.N.Y.1976). The aim of the rule is to prevent disclosure of the way in which information was presented to the grand jury, the specific questions and inquiries of the grand jury, the deliberations

and vote of the grand jury, the targets upon which the grand jury's suspicion focuses, and specific details of what took place before the grand jury. *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960); *United States v. Saks & Co.*, 426 F.Supp. at 815; *In re Senate Banking Committee Hearings*, 19 F.R.D. 410, 412–13 (N.D.Ill.1956). When a grand jury has returned an indictment, an accused apprehended, and the grand jury's work has ended and it has been discharged, "the veil of secrecy surrounding grand jury proceedings may safely be lifted where justice requires." *United States v. Alper*, 156 F.2d 222, 226 (2d Cir. 1946); *In re Report & Recommendation of Grand Jury*, 370 F.Supp. at 1229; *United States v. GMC*, 352 F.Supp. 1071, 1072 (E.D.Mich.1973).

Furthermore, it is doubtful whether mere documentary information was ever included within the scope of Rule 6(e) secrecy for grand juries. *State of Ill. v. Sarbaugh*, 552 F.2d 768, 772 n. 2 (7th Cir. 1977); *United States v. Weinstein*, 511 F.2d 622, 627 n. 5 (2d Cir. 1975). *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir. 1960), is a classic case concerning disclosure of documentary information previously presented to a federal grand jury. In that case, the Interstate Commerce Commission (ICC) subpoenaed documents which had been presented to a federal grand jury. The ICC was statutorily authorized to examine financial records of persons subject to its regulations. The district court held that ICC inspection of the documents did not constitute "disclosure of matters occurring before the grand jury" as safeguarded by Rule 6(e). The classic statement of that principle by the court was that

". . . when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what to place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury." *Id.* at 54.

A United States Senate Banking Committee requested to see documents which had been shown to a federal grand jury, and which were in the custody of the United States Attorney, in *In re Senate Banking Committee Hearings*, 19 F.R.D. 410 (N.D.Ill.1956). The committee filed a motion requesting that the United States Attorney be directed to permit inspection and to supply copies of the documents. Although the United States Attorney objected on the ground that the secrecy and confidentiality of the grand jury would be breached, the court rejected that argument. Instead, the court concluded that "when the fact or document is sought for itself, independently, rather than because it was stated before or displayed to the grand jury, there is no bar of secrecy." *Id.* at 412. The Senate Committee's motion for disclosure was granted. Similarly, in *Davis v. Romney*, 55 F.R.D. 337 (E.D.Pa.1972), the plaintiffs sought civil discovery by means of interrogatories of information contained in 23,000 file binders. The government refused to answer the interrogatories on the ground that the information presented in the binders had also been presented earlier as evidence to a special grand jury. The defendants expressly relied on Rule 6(e). The district court overruled the objection and ordered the defendants to answer the interrogatories stating, "the situation . . . is akin to *United States v. Interstate Dress Carriers, Inc.*"

■ The preceding cases establish the authority that (1) simply because documentary information is presented to a grand jury does not preclude it from all further examination but that (2) a good, independent basis for obtaining that information needs to be shown. When, along with several indictments, the federal grand jury in the District of Columbia returned a sealed report with a two page letter to Judge Sirica, recommending that the report be transmitted to the House of Representatives' Committee on the Judiciary, the indicted defendants objected. *In re Report & Recommendation of Grand Jury*, 370 F.Supp. 1219 (D.D.C.1974). Judge Sirica found it to be

". . . incredible that grand jury matters should lawfully be available to disbarment committees and police disciplinary investigations and yet be unavailable to the House of Representatives . . . Certainly Rule 6(e) cannot be said to mandate such a result." *Id.* at 1230.

Judge Sirica concluded that "delivery to the committee is imminently proper, and is indeed, obligatory."

■ In the present case, the documentary information presented to the grand jury is sought by Chairman Moss and the subcommittee for the purpose of examining the documents themselves, and not for any interest in the events that transpired during the grand jury proceedings. Furthermore, Chairman Moss has indicated that he is willing to accept copies of the documents, so that there would be no possibility that documentary information might be unavailable for use in the criminal trial in this Court. That accommodation by Chairman Moss protects the secrecy of the grand jury and the rights of the defendant. *Cf. Capitol Indem. Corp. v. First Minn. Constr. Co.*, 405 F.Supp. 929, 931 (D.Mass.1975). Furthermore, the need for secrecy concerning information presented during grand jury proceedings has virtually disappeared. The grand jury that returned an indictment against Ven-Fuel, Inc., in January of 1977, was discharged April 14, 1977. Hence, the grand jury is no longer sitting and investigating the documentary information previously presented to it.

Although Chairman Moss and the Subcommittee have requested only those documents which do not relate to the indictment and pending criminal case, the Court believes that in order to fortify the inviolable secrecy of the grand jury's deliberation that resulted in the indictment, there should be no segregation and identification of the documentary information into two separate groups. Consequently, the Court will order that, without any distinguishing classification, all of the documentary information presented to the grand jury be made available for examination by the staff and representatives of Chairman Moss. What Judge Sirica said about the sealed report returned by the grand jury with the recommendation that it be sent to the House Judiciary Committee, can be adapted and paraphrased about the documentary information sought by Chairman Moss and the Subcommittee. The documentary information

". . . draws no accusatory conclusions. It deprives no one of an official forum in which to respond. It is not a substitute for indictments where indictments might properly issue. It contains no recommendations, advice or statements that infringe on the prerogatives of other branches of government. . . It renders no moral or social judgments. [It] is a simple and straight forward compilation of information gathered by the Grand Jury, and no more." *In re Report & Recommendation of Grand Jury*, 370 F.Supp. at 1226.

Finally, in addition to the Court's conclusion that the mere documentary information presented to the grand jury does not constitute matters occurring before the grand jury, the Court finds, as discussed next, that Chairman Moss and the Subcommittee have made an independent showing of their legal right to obtain the documentary information desired.

## II. *Legislative Prerogative and Power to Investigate*

■ Article I, Section 6, Clause 1 of the Constitution provides

"The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech Or debate in either House, they shall not be questioned in any other Place."

The Speech or Debate Clause provides both an absolute immunity from being questioned about legislative activities, and the

inherent, implied power to conduct legislative activity. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975); *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). The scope of the Speech or Debate Clause is sweeping and awesome. Once the threshold test for the application of that clause is met, its authority and immunity is absolute. *Eastland v. United States Servicemen's Fund*, 421 U.S. at 503, 95 S.Ct. at 1821, 44 L.Ed.2d at 336.

■ The threshold test which must be met in order for the Speech or Debate Clause to apply is whether a member of Congress or his staff acting on his behalf are involved in conduct within a legitimate legislative sphere of activity. *Eastland v. United States Servicemen's Fund*, 421 U.S. at 503, 95 S.Ct. at 1821, 44 L.Ed.2d at 336; *Gravel v. United States*, 408 U.S. at 622, 92 S.Ct. at 2625, 33 L.Ed.2d at 600. By 'legitimate legislative sphere' is meant conduct or activity which has a legitimate legislative object or goal; by 'legitimate legislative object or goal' is meant a subject matter or area about which legislation could be had. *Eastland v. United States Servicemen's Fund*, 421 U.S. at 505–06, 95 S.Ct. at 1822, 44 L.Ed.2d at 338; *McGrain v. Daugherty*, 273 U.S. 135, 177, 47 S.Ct. 319, 329, 71 L.Ed. 580, 594 (1927); *United States v. AT&T*, 551 F.2d 384, 388 (D.C.Cir. 1976).

■ The Congress has no general authority to conduct generalized, unspecified investigations into private matters about which legislation could never be proper. *Eastland v. United States Servicemen's Fund*, 421 U.S. at 504 n. 15, 95 S.Ct. at 1822, 44 L.Ed.2d at 337 n. 15; *McGrain v. Daugherty*, 273 U.S. at 171–74, 47 S.Ct. at 327–28, 71 L.Ed. at 591–93. Apart from the initial limitation against generalized and non-legislative investigations, however, the authority of Congress under the Speech or Debate Clause to conduct investigations is absolute, and members of Congress are totally immune from any challenge to legislative investigatory activity. Additionally, there is a presumption that congressional activity has as its object a legitimate goal toward possible legislation. *McGrain v. Daugherty*, 273 U.S. at 178–79, 47 S.Ct. at 330, 71 L.Ed. at 594–95; *Ashland Oil, Inc. v. FTC*, 548 F.2d 977, 979 (D.C.Cir.1977). Neither the motives behind the legislative activity, nor the final product resulting from legislative activity may be questioned by the courts or the executive branch. *Eastland v. United States Servicemen's Fund*, 421 U.S. at 508–09, 95 S.Ct. at 1823, 44 L.Ed.2d at 339–40. Not even possible or actual infringement and violation of fundamental constitutional rights will permit any questioning or attempt to curtail congressional activity, so long as it is cloaked with the presumption of a legitimate legislative goal or object. *Id.* at 509–11, 95 S.Ct. at 1824–25, 44 L.Ed.2d at 340–41. To defeat that presumption is difficult: if the specific activities (1) occurred during sessions of Congress in connection with the business before it, or (2) are an integral part of legislative deliberating processes, in which members of Congress participate concerning matters that constitute potential objects of legislation, they are presumed to be within the scope of a legitimate legislative sphere, and are shielded by the absolute and invulnerable authority of the Speech or Debate Clause. *Eastland v. United States Servicemen's Fund*, 421 U.S. at 503–04, 95 S.Ct. at 1821, 44 L.Ed.2d at 336–37.

■ The legislative and executive branches are the political branches of government inasmuch as the members of those branches are answerable to the citizens who elect them and whom they represent. The effect of the Speech or Debate Clause is to preclude the executive branch or the courts from calling into question or requiring an accounting by the members of Congress for their legislative activities. So long as members of Congress are acting within their legitimate sphere, they can be held to answer or called to account only by their ultimate tribunal of reckoning, the electorate that they represent. Hence, in a case like this, it is improper for a court to defer to the opinions of the executive branch when the exercise of legitimate congressional authority is involved. *See Unit-*

ed States v. AT&T, 551 F.2d at 392. Unless the Congress grants the executive branch authority by statute, the authority of the executive branch is limited to the express and implied powers of Article II of the Constitution, insofar as those powers are not inconsistent with the express and implied legislative authority of Congress in Article I. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637–38, 72 S.Ct. 863, 871, 96 L.Ed. 1153, 1200 (1952) (Jackson, J., concurring); *United States v. AT&T*, 551 F.2d at 392.

■ The exclusive power, responsibility, and purpose of Congress is legislation. *McGrain v. Daugherty*, 273 U.S. at 160–61, 162–63, 47 S.Ct. at 324, 71 L.Ed. at 587–88. That power to legislate contains the inherent and implied power to obtain information needed in order to enact legislation. *Id.* at 161, 165, 175, 47 S.Ct. at 325–329, 71 L.Ed. at 587–589, 593. The power to obtain information necessary for legislating includes the right to use compulsory process as a means of acquiring the needed information. *Eastland v. United States Servicemen's Fund*, 421 U.S. at 504, 95 S.Ct. at 1821, 44 L.Ed.2d at 337; *McGrain v. Daugherty*, 273 U.S. at 165, 47 S.Ct. at 325–328, 174–76, 71 L.Ed. at 589, 593. "Congressional power to investigate and acquire information by subpoena is on a firm constitutional basis." *United States v. AT&T*, 551 F.2d at 393.

In *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), a Senate Subcommittee on internal security issued subpoenas duces tecum to a bank where the United States Service Fund (USSF) had an account. USSF and two of its members sued to enjoin service of the subpoenas duces tecum. USSF charged that the subpoenas constituted an unconstitutional abuse of the legislative power of inquiry that Congress possessed. The district court, when presented by the motion for a temporary restraining order, denied it. The court of appeals stayed the subpoenas pending an expedited consideration by the district court of USSF's preliminary injunction motion.

The district court then held an expedited hearing on the preliminary injunction motion as well as Chairman Eastland's motion to dismiss, and denied both. Once again the court of appeals stayed the subpoenas and ordered the district court to proceed to a hearing on the merits of the case. The district court denied USSF's request for a permanent injunction; and the court of appeals reversed. The United States Supreme Court, reversing the court of appeals and upholding the district court, held that "once it is determined that Members [of Congress] are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference" by the courts or the executive branch. *Id.* at 503, 95 S.Ct. at 1821, 44 L.Ed.2d at 336. The Supreme Court declared that the case illustrated

". . . vividly the harm that judicial interference may cause. A legislative inquiry has been frustrated for nearly five years, during which the Members and their aides have been obliged to devote time to consultation with their counsel concerning the litigation, and have been distracted from the purpose of their inquiry. The Clause was written to prevent the need to be confronted by such 'questioning' and to forbid invocation of judicial power to challenge the wisdom of Congress' use of its investigative authority." *Id.* at 511, 95 S.Ct. at 1825, 44 L.Ed.2d at 341.

*United States v. AT&T*, 551 F.2d 384 (D.C. Cir. 1976), was a case involving "a portentous clash between the executive and legislative branches" of the government. In that case, Chairman Moss and the same sub-committee on oversight and investigations issued a subpoena duces tecum to the president of American Telephone & Telegraph Company (AT&T), to produce copies of all national security request letters sent by the Federal Bureau of Investigation. Those request letters had specified target telephone lines to be tapped, identified the lines by the telephone numbers and addresses, and requested the cooperation of AT&T in tapping communications and monitoring conversations by the F.B.I. The executive

branch, under direction from the White House, opposed the subpoena, and after a series of negotiations aimed at reaching a compromise solution, the Department of Justice sought and obtained a temporary restraining order from the district court. The temporary restraining order was tantamount to

"... an order quashing the Committee's subpoena, which is generally an impermissible frustration of the congressional power to investigate an area, conceded by all to be the situation here, in which 'legislation could be had'". *Id.* at 388.

Although the district court recognized that the case involved a clash of the powers of the legislative and the executive branches, the court used a reasoning that consisted of analyzing the interests of the two branches, and balancing those interests against each other. In so doing, however, the district court actually deferred almost completely to the position and interests of the executive branch in reaching a decision. The court of appeals intimated that deference to executive determinations, "when the result of the deference would be to impede Congress in exercising its legislative powers," was constitutionally faulty. *Id.* at 392 and n. 12. However, in order to avoid a seemingly inevitable conflict among the branches of government, the court of appeals remanded the case without a decision, but with a suggested settlement approach for the legislative and executive branch representatives to follow. To date that settlement approach has not produced a resolution of the conflict.

The present case is also an involvement of the three branches of government, though without any direct conflict. There is a sense in which the powers and operations of the coequal, but interdependent, branches of the federal government are constitutionally established over theoretical fault lines. Disputes and confrontations between those branches always present the kinds of stress and tension that threaten to separate and divide those lines into chasms, ultimately collapsing our constitutionally created form of government. Hence, to avert and minimize such tensions is always the proper and prudent course of action.

■ There is no question that Chairman Moss and the Subcommittee have demonstrated their constitutionally independent legal right to the documents that they seek for their legitimate legislative activity. Consequently, the Court holds that they are entitled to disclosure of the documents they seek. Further, the Court will order that Chairman Moss, the members of the Subcommittee or their staff and representatives, be permitted to examine all of the documents, without segregation and identification of those upon which the criminal indictment was based, in order to determine what specific documents they wish produced for their use.

■ The Court finds that it has jurisdiction in this matter under the recent amendment to 28 U.S.C. § 1331, in that the United States Attorney is clearly an officer of the United States acting in his official capacity. Additionally, Chairman Moss has standing to move for disclosure of documents desired and needed for the exercise of the House of Representatives' constitutional investigatory power. *United States v. AT&T*, 551 F.2d at 391. Consequently, the Court will enforce this order authorizing disclosure to Chairman Moss, members of the Subcommittee, or their staff or representatives. However, once it has been determined precisely what documents are desired and needed for the Subcommittee to continue its legislative investigation, the Court will request that the Subcommittee issue its own subpoena duces tecum to the United States Attorney for the specific documents desired.

■ There is no question that failure to obey a subpoena duces tecum issued by the House of Representatives in furtherance of its legitimate activity would constitute a contempt of that House of Congress. *McPhaul v. United States*, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960). The Houses of Congress possess inherent authority to punish contempt of their orders by civil contempt proceedings in the legislative fo-

rum. *Jurney v. MacCracken*, 294 U.S. 125, 151–52, 55 S.Ct. 375, 379, 79 L.Ed. 802, 808 (1935); *In re Chapman*, 166 U.S. 661, 671–72, 17 S.Ct. 677, 681, 41 L.Ed. 1154, 1159 (1897); *United States v. Fort*, 143 U.S.App. D.C. 255, 262, 443 F.2d 670, 677 (1971). Although Congress implemented its inherent authority by enacting 2 U.S.C. § 192, to provide a proceeding in a judicial forum with a penalty for criminal contempt of Congress, it did not impair or divest itself of its "essential and inherent power to punish for contempt" which "still remains in each House." *In re Chapman*, 166 U.S. at 672, 17 S.Ct. at 681, 41 L.Ed. at 1159. *See also Jurney v. MacCracken*, 294 U.S. at 151–52, 55 S.Ct. at 379, 79 L.Ed. at 808; *United States v. Fort*, 143 U.S.App.D.C. at 261–62, 443 F.2d at 676–77. Consequently, the same conduct before Congress can constitute both a criminal offense and civil contempt, punishable by civil contempt proceedings in the legislature and criminal prosecution in the courts, without any violation of the double jeopardy clause. *Jurney v. MacCracken*, 294 U.S. at 151–52, 55 S.Ct. at 379, 79 L.Ed. at 808; *In re Chapman*, 166 U.S. at 672, 17 S.Ct. at 681, 41 L.Ed. at 1159–60; *United States v. Fort*, 143 U.S. App.D.C. at 262, 443 F.2d at 677. The House of Representatives, therefore, retains its inherent power to enforce its own subpoena duces tecum against any resistance or reluctance to comply with it, by means of civil contempt proceedings and remedies within its own forum. Such a procedure might relieve the judiciary from any further involvement in this matter. That procedure might also avoid potential conflicts between the legislative and executive branches, and within the executive branch itself, that would result from a prosecution by the executive branch, of an executive branch official, for conduct in accordance with executive branch policy which the House of Representatives might deem contempt of its legislative prerogative and authority.